**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LAWRENCE ZUCKER, Individually and On Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | CLASS ACTION |
| EXPRESS SCRIPTS HOLDING COMPANY, MAURA C. BREEN, WILLIAM J. DELANEY, ELDER GRANGER, NICHOLAS J. LAHOWCHIC, THOMAS P. MAC MAHON, KATHLEEN M. MAZZARELLA, WOODROW A. MYERS, JR., FRANK MERGENTHALER, RODERICK A. PALMORE, GEORGE PAZ, WILLIAM L. ROPER, SEYMOUR STERNBERG, and TIMOTHY WENTWORTH, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Lawrence Zucker ("Plaintiff") by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Express Scripts Holding Company ("Express Scripts" or the "Company") against Express Scripts and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction pursuant to which Express Scripts will be acquired by Cigna Corporation

("Cigna") through its wholly owned subsidiaries, Halfmoon Parent, Inc. ("New Cigna"), Halfmoon I, Inc. ("Cigna Merger Sub") and Halfmoon II, Inc. ("Express Scripts Merger Sub") (the "Proposed Transaction").

2.      On March 8, 2018, Express Scripts and Cigna issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated March 8, 2018. Pursuant to the terms of the Merger Agreement, following a series of mergers, Express Scripts and Cigna will be combined under a new holding company, New Cigna, which will be renamed "Cigna Corporation" immediately after the mergers. Express Scripts stockholders will receive 0.2434 of a share of New Cigna common stock and $48.75 in cash for each Express Scripts common share held. The Proposed Transaction is valued at approximately $54 billion, excluding debt.

3.      On May 16, 2018, New Cigna filed a Form S-4 Registration Statement containing a proxy statement of Express Scripts (the "Registration Statement") with the SEC in connection with the Proposed Transaction. The Registration Statement, which recommends that Express Scripts stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Express Scripts' and Cigna's financial projections, relied upon by Express Scripts' financial advisors, Centerview Partners LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard"), in their financial analyses; (ii) the valuation analyses prepared by Centerview and Lazard in connection with the rendering of their fairness opinions; (iii) the sale process leading to the Proposed Transaction; and (iv) Lazard's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as Express Scripts

stockholders need such information to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction.

4.      In short, unless remedied, Express Scripts' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Express Scripts is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.　Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Express Scripts.

9.　Express Scripts is a Delaware corporation whose registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808. Express Scripts maintains its principal executive offices at One Express Way, St. Louis, Missouri 63121. Express Scripts is the largest independent pharmacy benefit management ("PBM") company in the U.S. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "ESRX."

10.　Defendant Maura C. Breen ("Breen") has served as a director of the Company since July 2004.

11.　Defendant William J. Delaney ("Delaney") has served as a director of the Company since September 2011.

12.　Defendant Elder Granger ("Granger") has served as a director of the Company since May 2015.

13.　Defendant Nicholas J. LaHowchic ("LaHowchic") has served as a director of the Company since July 2001.

14.　Defendant Thomas P. Mac Mahon ("Mac Mahon") has served as a director of the Company since March 2001 and as Lead Independent Director since May 2008.

15.　Defendant Kathleen M. Mazzarella ("Mazzarella") has served as a director of the Company since June 2017.

16.　Defendant Woodrow A. Myers, Jr. ("Myers") has served as a director of the Company since May 2007.

17.     Defendant Frank Mergenthaler ("Mergenthaler") has served as a director of the Company since January 2009.

18.     Defendant Roderick A. Palmore ("Palmore") has served as a director of the Company since September 2014.

19.     Defendant George Paz ("Paz") has served as a director of the Company since January 2004 and as Chairman of the Board since May 2006. Defendant Paz previously served as Chief Executive Officer ("CEO") of the Company from April 2005 to May 2016, as President of the Company from October 2003 to February 2014, and as Chief Financial Officer of the Company from January 1998 to April 2004.

20.     Defendant William L. Roper ("Roper") has served as a director of the Company since April 2012.

21.     Defendant Seymour Sternberg ("Sternberg") has served as a director of the Company since March 1992.

22.     Defendant Timothy Wentworth ("Wentworth") has served as President of the Company since February 2014, CEO of the Company since May 2016 and as a director of the Company since June 2015.

23.     Defendants referenced in paragraphs 10 to 22 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

24.     Cigna is a Delaware corporation with its principal executive offices located at 900 Cottage Grove Road, Bloomfield, Connecticut 06002. Cigna is a global health service company that provides medical, pharmacy, behavioral, dental, disability, life and accident insurance and related products and services. Cigna's common stock is traded on the New York Stock Exchange under the ticker symbol "CI."

25.     New Cigna is a Delaware corporation and a direct wholly owned subsidiary of Cigna.

26.     Cigna Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of New Cigna.

27.     Express Scripts Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of New Cigna.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Express Scripts common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

30.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of March 7, 2018, there were approximately 561,236,845 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Express Scripts or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

31.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

32.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

34.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

35.     St. Louis, MO-based Express Scripts is a PBM company, an intermediary between companies and organizations that buy drugs (including insurance companies) and the suppliers of drugs. It is the largest independent PBM in the United States, responsible for the prescription plans of more than 80 million Americans.

36.     Express Scripts offers a full range of services that aim to improve patient outcomes and help control the drug costs borne by its clients. The Company does this by evaluating the effectiveness, price and value of formularies; providing home delivery and

specialty services that result in cost savings and better care for members; leveraging its volume to get discounts for health benefit providers and encouraging the use of lower-cost brands and generics. Express Scripts' clients include managed care organizations, health insurers, third-party administrators, union-sponsored benefit plans, and workers' compensation plans, among others.

37. The Company's revenues are generated primarily from delivering prescription drugs through a contracted network of retail pharmacies, home delivery pharmacies and specialty pharmacies. Express Scripts' revenues generated from the delivery of prescription drugs represented 95.2% of its revenues in 2017, 98.3% in 2016 and 98.0% in 2015. The balance of Express Scripts' revenues is generated from services, such as the administration of formulary management processing for certain client contracts that do not include claims adjudication and the dispensing of prescription drugs, as well as medical benefit management services, and other fee-for-service arrangements.

38. Despite recent headwinds in the healthcare industry, Express Scripts is well-positioned to achieve and sustain success in the future.

39. Underscoring its positioning for future growth, on October 24, 2017, the Company announced its third quarter 2017 financial results, including net income of $841.7 million, or $1.46 per diluted share, a 16% and 27% increase compared to its third quarter 2016 results, respectively. 2017 third quarter adjusted earnings per diluted share ("EPS") was $1.90, a 9% increase over the third quarter 2016. The Company increased its guidance for its full year 2017 adjusted EPS from a range of $6.95 to $7.05 to a range of $6.97 to $7.05, representing growth of 10% over 2016 adjusted EPS results at the mid-point of the range. Defendant Wentworth highlighted the Company's positioning for long term growth, stating:

> We have taken significant steps forward this year to build upon our
> heritage of industry leadership, client alignment and quality patient

> care, all of which positions us for growth . . . . We are transforming
> Express Scripts to win for the long term through significant
> investments in technology, launches of novel solutions that address
> the country's biggest healthcare challenges, and expanding our role
> and reach in the broader healthcare market with our agreement to
> acquire eviCore. Payers and patients want affordable, quality care
> and access to medicine. No one is better positioned than Express
> Scripts to put medicine within reach

40.     On December 14, 2017, Express Scripts updated its 2017 full-year guidance,
increasing its full year 2017 adjusted EPS from a range of $6.97 to $7.05 to $7.00 to $7.08. The
Company also announced 2018 guidance, including achieving adjusted EPS for 2018 in the
range of $7.67 to $7.87, representing growth of 9% to 12% from the midpoint of its updated
2017 adjusted EPS guidance range. In the press release, defendant Wentworth was quoted as
stating:

> The need for a focused PBM has never been greater than it is
> today. . . . In 2017, we demonstrated the power of our model by
> consistently delivering savings to payers while ensuring our
> patients have access to the right medications at the best possible
> price and with the greatest level of care. We are proud of what we
> have accomplished in 2017, and are exceptionally well positioned
> to capture saving opportunities for our clients, achieve better health
> outcomes and deliver strong results to shareholders in the future.

41.     The next day, Express Scripts announced the completion of its $3.6 million
acquisition of privately held eviCore healthcare, a provider in evidence-based and integrated
medical benefit management services solutions that help reduce costs and provide quality care.
The press release highlighted the significant benefits Express Scripts will achieve from the
acquisition, including that it: "[i]mproves [Express Scripts'] ability to address enormous
inefficiencies and unnecessary spending," allows the Company to "[l]everage[] evidence-based
medicine, advanced data analytics and clinical specialization to improve care and control cost
across pharmacy and medical platforms," and "[d]elivers accretion to growth, earnings and cash
flow."

42.    On February 27, 2018, the Company announced its fourth quarter and full year 2017 financial results. Net income for the quarter was $2,327.6 million ($1,381.0 attributable to the Tax Cuts and Jobs Act (the "Tax Act")), or $4.10 per diluted share ($2.43 per share attributable to the Tax Act), up 62% and 75% from the fourth quarter of 2016, respectively. Net income for the full year 2017 was $4,517.4 million ($1,381.0 attributable to the Tax Act), or $7.74 per diluted share ($2.37 per share attributable to Tax Act), up 33% and 44% from the full year 2016, respectively. Consolidated 2017 fourth quarter and full year adjusted EPS were $2.16 and $7.10, respectively, a 15% and 11% increase over the fourth quarter and full year 2016 adjusted EPS, respectively. The Company reaffirmed its 2018 guidance, including consolidated 2018 adjusted EPS guidance in the range of $9.27 to $9.47 ($1.60 attributable to the Tax Act), representing growth of 32% over 2017 consolidated adjusted earnings per diluted share at the mid-point of the range. Defendant Wentworth again highlighted the Company's positioning for growth, stating:

> Throughout 2017, Express Scripts kept our patients and clients ahead of the curve by providing best-in-class solutions. These solutions limited prescription drug spending growth to an average of 1.5% over 2016, a record low, for commercial plans . . . . We have also seen a strong start to 2018, with outstanding client implementations, a solid start to the selling season and new strategic collaborations. With this foundation and momentum, we are well positioned to drive core business growth in 2018 and beyond.

**The Sale Process**

43.    During the summer of 2017, Express Scripts senior management engaged in exploratory discussions regarding a potential business combination with a company referred to in the Registration Statement as "Express Scripts Company A," subject to a mutual confidentiality agreement.

44.     On October 30, 2017, members of Express Scripts and Cigna senior management met to discuss the parties' existing business relationships as customers of each other and to explore opportunities for potential commercial arrangements.

45.     On December 7, 2017, defendant Wentworth met with David Cordani ("Cordani"), Cigna's CEO, to discuss a potential business combination. Over the next few months, the parties and their advisors continued to discuss a potential transaction.

46.     On December 8, 2017, James Havel ("Havel"), Express Scripts' Chief Financial Officer, met with the senior management of a company in the healthcare industry referred to in the Registration Statement as "Express Scripts Company B."

47.     On January 9, 2018, Cigna delivered an initial proposal letter to acquire the Company for between $87 and $89 per share, consisting of approximately 50% cash and 50% Cigna common stock.

48.     Following discussions and negotiations, on February 28, 2018, Cigna and Express Scripts agreed to a proposed price of $97.50 per share, consisting of approximately 50% cash and 50% Cigna common stock.

49.     Thereafter, the parties continued to discuss the remaining terms of the Merger Agreement.

50.     On March 7, 2018, each of Centerview and Lazard rendered their fairness opinions and the Board approved the Merger Agreement. The next day, the parties executed the Merger Agreement.

**The Proposed Transaction**

51.     Following entry into the Merger Agreement, the Company and Cigna issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

BLOOMFIELD, Conn. & ST. LOUIS, 08 March, 2018 - Cigna Corporation (NYSE: CI) and Express Scripts Holding Company (NASDAQ: ESRX) today announced that they have entered into a definitive agreement whereby Cigna will acquire Express Scripts in a cash and stock transaction valued at approximately $67 billion, including Cigna's assumption of approximately $15 billion in Express Scripts debt. The merger consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share. The transaction was approved by the board of directors of each company.

"Cigna's acquisition of Express Scripts brings together two complementary customer-centric services companies, well-positioned to drive greater quality and affordability for customers," said David M. Cordani, President and Chief Executive Officer of Cigna. "This combination accelerates Cigna's enterprise mission of improving the health, well-being and sense of security of those we serve, and in turn, expanding the breadth of services for our customers, partners, clients, health plans and communities. Together, we will create an expanded portfolio of health services, delivering greater consumer choice, closer alignment between the customer and health care provider, and more personalized value. This combination will create significant benefits to society and differentiated shareholder value."

"First and foremost, we believe this transaction delivers attractive value to the Express Scripts shareholders" said Tim Wentworth, President and Chief Executive Officer of Express Scripts. Regarding the combination of Cigna and Express Scripts, Mr. Wentworth noted, "Together, our two organizations will help make the healthiest choices the easiest choices, putting health and pharmacy services within reach of everyone we serve. Adding our company's leadership in pharmacy and medical benefit management, technology-powered clinical solutions, and specialized patient care model to Cigna's track record of delivering value through innovation, we are positioned to transform healthcare. We will continue to have a distinct focus at Express Scripts and eviCore on partnering with health plans, and together, build tailored solutions for health plans and their members. Importantly, this agreement is a testament to the work of our team and their resolute focus on providing the best care to patients, and the most value to clients."

* * *

Terms of the Agreement

12

Under the terms of the definitive agreement, the transaction consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share, or $54 billion in the aggregate. Upon closing of the transaction, Cigna shareholders will own approximately 64% of the combined company and Express Scripts shareholders will own approximately 36%. The consideration represents an approximately 31% premium to Express Scripts' closing price of $73.42 on March 7, 2018.

Upon closing, the combined company will be led by David M. Cordani as President and CEO. Tim Wentworth will assume the role of President, Express Scripts. The combined company's board will be expanded to 13 directors, including four independent members of the Express Scripts board.

The combined company will be named Cigna. Cigna's headquarters in Bloomfield, Connecticut, will become the headquarters for the combined company, and Express Scripts will be headquartered in St. Louis, Missouri. At closing, the combined company will make an incremental investment of $200 million in its charitable foundation, to support the communities in which it operates, and with the continued focus on improving societal health.

## Insiders' interests in the Proposed Transaction

52. Cigna and Express Scripts insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Express Scripts.

53. Notably, defendant Wentworth has secured employment for himself upon consummation of the Proposed Transaction as President of Express Scripts, reporting to the CEO of New Cigna. Additionally, defendants DeLaney, Granger, Mazzarella and Roper have secured positions for themselves as directors of New Cigna upon completion of the Proposed Transaction.

54.     Moreover, if they are terminated in connection with the Proposed Transaction, Express Scripts' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name [1] | Cash ($) [2] | Equity ($) [3] | Pension / NQDC ($) [4] | Perquisites / Benefits ($) [5] | Tax Reimbursement ($) [6] | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Timothy Wentworth | 13,413,698 | 40,295,962 | — | 68,691 | — | — | 53,778,351 |
| James Havel | 4,600,274 | 7,141,891 | — | 23,852 | — | — | 11,766,017 |
| Christine Houston | 4,200,000 | 9,201,849 | — | 23,198 | — | — | 13,425,047 |
| Everett Neville | 3,996,576 | 8,083,329 | — | 36,120 | — | — | 12,116,025 |
| David Queller | 3,208,220 | 7,696,081 | — | 21,658 | — | — | 10,925,959 |

## The Registration Statement Contains Material Misstatements or Omissions

55.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Express Scripts' stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

56.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Express Scripts and Cigna's financial projections, relied upon by Express Scripts' financial advisors, Centerview and Lazard, in their financial analyses; (ii) the valuation analyses prepared by Centerview and Lazard in connection with the rendering of their fairness opinions; (iii) the sale process leading to the Proposed Transaction; and (iv) Lazard's potential conflicts of interest. Accordingly, Express Scripts stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Express Scripts' and Cigna's Financial Projections*

57.     First, the Registration Statement omits material information regarding the Company's and Cigna's financial projections provided by, in the case of the Company's forecasts, Express Scripts' management, and relied upon by Centerview and Lazard for their analyses.

58.     For example, the Registration Statement states:

> In connection with rendering [its] opinion . . . Centerview reviewed . . . certain information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Express Scripts, including the Express Scripts management forecasts. . . .certain information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Cigna, including the Cigna forecasts.

Registration Statement at 114. The Registration Statement further sets forth:

> In connection with its opinion, Lazard: reviewed the Express Scripts management forecasts and other data provided to Lazard by Express Scripts relating to the business of Express Scripts, the Cigna forecasts and other data provided to Lazard by Cigna relating to the business of Cigna, certain publicly available financial forecasts and other data relating to the business of Cigna. . . .

Id. at 125. Yet, the Registration Statement fails to set forth the full set of projections for Express Scripts and Cigna provided to Centerview and Lazard in connection with their respective analyses.

59.     In performing their Discounted Cash Flow Analyses ("DCFs") of Express Scripts, both Centerview and Lazard used unlevered free cash flow for the Company spanning the fiscal year ending December 31, 2018 – December 31, 2027. As set forth in the Registration Statement:

> [u]nlevered free cash flow as calculated by Lazard and Centerview is defined as (1) Adjusted EBITDA less (2) depreciation and amortization, less (3) income tax expense (based on an applicable tax rate provided by Express Scripts management), less (4) after-tax non-controlling interest, plus (5) depreciation and amortization

(after calculating income tax expense in (3)), less (6) capital expenditures, less (7) (increase)/decrease in net working capital, less (8) restructuring charges, in each case, as provided in the Express Scripts management forecasts or as otherwise provided by Express Scripts management.

Registration Statement at 139.

60.     The Registration Statement, however, only sets forth Express Scripts management forecasts for the years 2018-2022 and that only includes the following projection line items: Total Revenues, Core Revenues, Adjusted EBITDA, Core EBITDA, Adjusted Net Income, and Adjusted EPS. The Registration Statement must disclose the full forecasts for the projection line items set forth above for the fiscal year ending December 31, 2023 – December 31, 2027 or Express Scripts management's estimates and assumptions with respect to growth rates for such fiscal years used to extrapolate the forecasts. The Registration Statement must also disclose for fiscal year ending December 31, 2018 – December 31, 2027, the following projection line items as used by both Centerview and Lazard in calculating the Company's unlevered free cash flow: (i) depreciation and amortization; (ii) income tax expense; (iii) after-tax non-controlling interest; (iv) capital expenditures; (v) (increase)/decrease in net working capital; and (vi) restructuring charges.

61.     Similarly, in performing their DCFs of Cigna, both Centerview and Lazard used two sets of unlevered free cash flow for Cigna spanning 2018 –2022, one based on forecasts provided by Cigna and the other based on Cigna Wall Street forecasts. As set forth in the Registration Statement, for the forecasts provided by Cigna:

> [u]nlevered free cash flow as calculated by Lazard and Centerview is defined as (1) EBITDA, less (2) depreciation and amortization, (3) less income tax expense (based on an applicable tax rate provided by Cigna management), plus (4) depreciation and amortization (after calculating income tax expense in (3)), less (5) capital expenditures, less (6) (increase)/decrease in net working

capital, less (7) cash to statutory requirement, in each case, as provided in the Cigna forecasts.

For the unlevered free cash flow based on Cigna Wall Street forecasts, the Registration Statement states:

> [u]nlevered free cash flow as calculated by Lazard and Centerview is defined as (1) EBITDA, less (2) depreciation and amortization (based on Wall Street research analyst reports, where available), (3) less income tax expense (based on an applicable tax rate included in Wall Street research analyst reports), plus (4) depreciation and amortization (after calculating income tax expense in (3)), less (5) capital expenditures (based on Wall Street research analyst reports, where available), less (6) (increase)/decrease in net working capital (based on historical trends for Cigna), less (7) cash to statutory requirement (based on assumed rate approved by Express Scripts management), in each case, as provided in the Cigna Wall Street forecasts or based on assumptions and methodologies approved by Express Scripts management.

62.     The Registration Statement, however, omits and must disclose the following projection line items underlying the unlevered free cash flows for Cigna as used in Centerview and Lazard's DCFs: (i) EBITDA (Cigna forecasts only); (ii) depreciation and amortization; (iii) income tax expense; (iv) capital expenditures; (v) (increase)/decrease in net working capital; and (vi) cash to statutory requirement.

63.     The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: "Summary Unaudited Prospective Financial Information Prepared by Express Scripts," "Wall Street Unaudited Prospective Financial Information," "Cigna Free Cash Flow," and "Opinions of Financial Advisors to Express Scripts."

*Material Omissions Concerning Centerview's and Lazard's Financial Projections*

64.     The Registration Statement describes Centerview's and Lazard's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the

description of Centerview's and Lazard's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Express Scripts' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's and Lazard's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Express Scripts' stockholders.

65.     With respect to Centerview's Selected Trading Company Analysis of Express Scripts, the Registration Statement fails to disclose: (i) the financial metrics for the companies observed by Centerview in the analysis; and (ii) Express Scripts' net debt as of March 2, 2018.

66.     With respect to Centerview's Selected Precedent Transaction Analysis, the Registration Statement fails to disclose: (i) Express Scripts' net debt as of March 2, 2018.

67.     With respect to Centerview's Discounted Cash Flow Analysis of Express Scripts, the Registration Statement fails to disclose: (i) quantification of the actual inputs and assumptions underlying the discount rate range of 8.0% to 9.5% selected and used by Centerview in its analysis; (ii) Express Scripts' unlevered free cash flows for the terminal year utilized to calculate the range of illustrative terminal values for the Company; (iii) Express Scripts' net debt as of March 2, 2018; and (iv) the terminal exit multiples implied from Centerview's analysis.

68.     With respect to Centerview's Selected Trading Company Analysis of Cigna, the Registration Statement fails to disclose: (i) the financial metrics for the companies observed by Centerview in the analysis; and (ii) Cigna's net debt as of March 2, 2018.

69.     With respect to Centerview's Discounted Cash Flow Analysis of Cigna the Registration Statement fails to disclose: (i) quantification of the actual inputs and assumptions

underlying the discount rate range of 8.0% to 9.5% selected and used by Centerview in its analysis; (ii) Cigna's unlevered free cash flows for the terminal year utilized to calculate the range of illustrative terminal values for Cigna; (iii) Cigna' net debt as of March 2, 2018; and (iv) the terminal exit multiples implied from Centerview's analysis.

70.     With respect to Lazard's Discounted Cash Flow Analysis of Express Scripts, the Registration Statement fails to disclose: (i) quantification of the actual inputs and assumptions underlying the discount rate range of 8.0% to 9.0% selected and used by Lazard in its analysis; (ii) quantification of the Company's stock-based compensation that was treated as a cash expense; and (iii) the terminal exit multiples implied from Lazard's analysis.

71.     With respect to Lazard's Selected Public Companies Analysis of Express Scripts, the Registration Statement fails to disclose the financial metrics for the companies observed by Lazard in the analysis.

72.     With respect to Lazard's Discounted Cash Flow Analysis of Cigna, the Registration Statement fails to disclose (i) quantification of the actual inputs and assumptions underlying the discount rate range of 8.0% to 9.0% selected and used by Lazard in its analysis; (ii) quantification of the Company's stock-based compensation that was treated as a cash expense; and (iii) the terminal exit multiples implied from Lazard's analysis.

73.     With respect to Lazard's Selected Public Companies Analysis of Cigna, the Registration Statement fails to disclose the financial metrics for the companies observed by Lazard in the analysis.

74.     The omission of this information renders the Registration Statement false and misleading, including, inter alia, the following section of the Registration Statement: "Opinions of Financial Advisors to Express Scripts."

*Material Omissions Concerning the Background Process of the Proposed Transaction*

75.    The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

76.    The Registration Statement fails to expressly indicate whether the confidentiality agreement that Express Scripts entered into with a prospective bidder identified in the Registration Statement as "Express Scripts Company A", is still in effect and/or contains a "don't ask, don't waive" ("DADW") standstill provision that is presently precluding this prospective bidder from making a topping bid for the Company.

77.    The disclosure of the existence and terms of the confidentiality agreement Express Scripts entered into with Express Scripts Company A is crucial to Express Scripts stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

78.    The omission of this information renders the statements in the "Background of the Mergers" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Lazard's Potential Conflicts of Interest*

79.    Further, the Registration Statement fails to disclose material information concerning the fees received by Lazard for its past work performed for Express Scripts.

80.    The Registration Statement sets forth that:

> Lazard in the past provided certain investment banking services to Express Scripts and/or certain of its affiliates unrelated to the transaction, for which Lazard received compensation, including, during the two-year period prior to the date of its opinion, having acted as a financial advisor to Express Scripts in connection with its acquisition of CareCore National Group, LLC, doing business as eviCore healthcare.

Registration Statement at 133. The Registration Statement fails, however, to disclose the fees received by Lazard for these services.

81.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

82.     The omission of this information renders the statements in the "Opinion of Lazard Frères & Co. LLC" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

83.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act
And SEC Rule 14a-9 Promulgated Thereunder**

84.     Plaintiff repeats all previous allegations as if set forth in full.

85.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not

misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

86.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. The Registration Statement misrepresented and/or omitted material facts, including material information about the value of the Company and Cigna, the financial analyses performed by the Company's financial advisors, and the sale process leading to the Proposed Transaction. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

87.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

88.      By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

89.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

90.     Plaintiff repeats all previous allegations as if set forth in full.

91.     The Individual Defendants acted as controlling persons of Express Scripts within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Express Scripts and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

92.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

93.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

94.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and

information that they reviewed and considered — descriptions which had input from the Individual Defendants.

95. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

96. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Express Scripts, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Express Scripts stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

24

DATED: June 26, 2018                    Respectfully Submitted,

                                        NAPOLI SHKOLNIK, LLC
                                        */s/ R. Joseph Hrubiec*
                                        R. Joseph Hrubiec, Esq. (#5500)
                                        919 Market Street
                                        Suite 1801
                                        Wilmington, Delaware 19801
                                        (302) 330-8025

                                        Aaron Brody (*Pro Hoc Vice Forthcoming*)
                                        **STULL, STULL, & BRODY**
                                        6 East 45th Street
                                        New York, NY 10017
                                        Telephone: (212) 687-7230
                                        Facsimile: (212) 490-2022
                                        Email: abrody@ssbny.com

                                        ***Attorneys for Plaintiff***